UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CATHERINE OPDYCKE, | : | CIVIL ACTION NO. 03-4880 (MLC) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| EDWARD J. STOUT, et al., | : | |
| | : | |
| Defendants. | : | |

**COOPER, District Judge**

Defendants Stephanie Carey ("Carey") and Franklin Township ("the Township"), and defendants Edward J. Stout ("Stout"), Haddon Stein ("Stein"), and James L. Ferguson ("Ferguson") (collectively "the police") move separately pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) for summary judgment as to the claims asserted against them for, <u>inter alia</u>, violations of the plaintiff's Fourth, Fifth, and Sixth Amendment rights.  (Am. Compl.)  The Court, for the reasons stated herein, will grant the parts of the separate motions concerning claims brought under federal law.

**BACKGROUND**

**I. Facts**

Plaintiff, Catherine Opdycke ("Opdycke"), moved into the Society Hill ("Society Hill") condominiums located in the Township in 1987.  (Pl. Stmt. of Facts, at 2.)  Opdycke had a history of housing multiple cats at the same time, and during the course of her residency several neighbors registered complaints

about the odor surrounding her unit.  (4-5-05 Opdycke Dep., at 34-35, 46.)  Society Hill brought an action on September 6, 2001, in New Jersey Superior Court seeking to enjoin Opdycke from housing any more cats.  (4-6-05 Opdycke Dep., at 248.)

Franklin Township Police and Animal Control came to Opdycke's unit on September 8, 2001 in response to a 911 call.  (Id.)  Opdycke was having an allergic reaction to an anti-depressant drug she was taking, and she voluntarily went to Somerset Medical Center.  (4-5-05 Opdycke Dep., at 13-14.)  Animal Control removed 36 cats from Opdycke's unit on that day.  (Pl. Stmt. of Facts, at 2.)  Opdycke had been unable to feed or clean the cats' litter boxes because of her health for three days prior to September 8, 2001.  (5-17-02 Opdycke Dep., at 132.)  There were approximately thirty stacks of "stuff" for an upcoming garage sale in addition to at least 20 litter boxes in the condominium.  (4-5-05 Opdycke Dep., at 61-62.)  Opdycke was treated at Somerset Medical Center for depression and remained there until September 17, 2001.  (Id. at 62.)

Carey, the Franklin Township Registered Environmental Health Specialist, conducted an inspection of Opdycke's unit on September 10, 2001.  (Pl. Stmt. of Facts, at 2.)  Opdycke's unit was deemed unfit for human habitation, and a notice to abate a nuisance affecting public health was issued on September 11, 2001.  (Mannion Certif. Ex. C.)  It stated that the presence of

2

"cat feces, ammonia, fleas, putrescent garbage and debris accumulation in the unit is an acute health hazard," and that all contaminated materials had to be removed within 30 days.  (Id.) Walter Galanowsky, Director of Health for the Township, sent a letter to Opdycke advising her of these conditions, and advised her of her rights to request a hearing and respond to the complaint.  (Id.)  Carey posted a warning on the front door of Opdycke's unit stating "Notice to abate a nuisance affecting public health.  Unfit for human habitation . . . All contaminated materials must be removed from the unit within thirty days . . . ."  (Pl. Stmt. of Facts, at 3-4.)  Opdycke saw the notice when she was released from Somerset Medical Center on September 17, 2001.  (Id. at 4.)

Franklin Township Police were called to Opdycke's unit on September 21, 2001 because Opdycke had entered the unit in violation of the notice.  (Id. at 7.)  The responding officer advised Opdycke to contact the police if she needed to return, and to contact Carey to clarify the terms on which she could return to the condominium.  (Id.; Apuzzo Certif. Ex. G.)  Mark Imbriani, attorney for Society Hill, wrote to Opdycke's attorney on September 25, 2001 (Opdycke received a copy of a letter), and advised Opdycke that she was prohibited from entering the unit without notifying police or the health department, and that Society Hill residents were advised to call the police if they

3

saw Opdycke entering her unit.  (<u>Society Hill v. Opdycke</u>, Civ.
Action No. 12055-01, 6-10-02 Trial Tr., at 82-83.)  The letter
also indicated that any cleanup had to be done by a professional
company.  (<u>Id.</u>)

    Carey again visited Opdycke's unit on October 12, 2001.  She
went in the sliding glass door in the back of the unit, and found
Opdycke inside the unit. (Pl. Stmt. of Facts, at 10.)  Carey did
not go in any further once she discovered Opdycke.  (<u>Id.</u>)
Opdycke refused to let Carey in to do an inspection.  (<u>Id.</u>)
Carey called her supervisor who directed her to call the police.
(<u>Id.</u> at 11.)  Officer Stout arrived at the unit, knocked on the
door, and received no response.  (<u>Id.</u>)  Stout called Sergeant
Stein who also came to the scene.  (<u>Id.</u> at 12.)  After Opdycke
continued to refuse to open the door, Stout and Stein called
their supervisor, Captain Ferguson, for further instruction.
(<u>Id.</u> at 13.)  Ferguson told Stout and Stein that a forced entry
was authorized.  (<u>Id.</u> at 14; Apuzzo Certif. Ex. P.)

    The officers again knocked on Opdycke's door and asked her
to open it. (Pl. Stmt. of Facts, at 16.)  Stout began to pry
open the door upon Opdycke's refusal.  (<u>Id.</u>)  Opdycke warned
Stout that she had just been released from a psychiatric ward and
that she would hang herself if he continued to seek entry.  (<u>Id.</u>
at 17.)  Stout continued to try to open the door.  (<u>Id.</u>)  He
encountered resistance when trying to force the door open because

4

Opdycke had placed a tea cart against the door, and the rug on the floor impeded the movement of the door, and tea cart.  (Id. at 18.)  Once inside Stout used his pepper spray on Opdycke, handcuffed her, and led her out of the unit and into the police car.  (Id. at 19-20, 22.)  Opdycke refused to place her legs in the car.  (Id. at 23.)  She swung her legs around and hit Stout when he began to move her legs into the car.  (Id.)  Once Stout removed Opdycke from the unit, Carey stepped inside to verify that the condominium had not been cleaned.  (Carey and Twp. Stmt. of Facts, at ¶ 51.)  Stout and Stein took Opdycke to Somerset Medical Center.  (Pl. Stmt. of Facts, at 25.)  From there, she was transported to St. Francis Hospital in Trenton, New Jersey, and released on October 15, 2001.  (Id. at 27.)

Opdycke, as a result of the incident, was charged with (1) attempting to prevent a public servant from lawfully performing an official function (obstruction), (2) recklessly creating a hazardous or physically dangerous condition (disorderly conduct), and (3) simple assault.  (Id.)  Carey charged Opdycke with ten separate violations of township ordinances based on the uninhabitable condition of her unit.  (6-11-03 Municipal Appeal Trial Tr., Appeal No. 14-03 & 56-02, at 25.)

## II. Procedural History

Opdycke was found guilty of obstruction and assault on December 3, 2002 in Warren Township Municipal Court.  On appeal

5

in the Superior Court of New Jersey, Law Division, Somerset
County, the obstruction conviction was reversed.  (11-6-03
Superior Ct. Order., Appeal No. 14-03 & 56-02.)  Opdycke was also
found guilty in Warren Township Municipal Court on January 3,
2003 of the ten ordinance violations.  (Carey & Twp. Br., at 4.)
On appeal, all of the ordinance convictions were upheld.  (Id.)

Opdycke asserted a third-party complaint in the injunction
action brought against her by Society Hill.  She asserted the
complaint against the Township, and the Department of Health of
Franklin Township  ("Department of Health") on October 19, 2001.
(Mannion Certif. Ex. E.)  Opdycke sought compensatory damages,
and an order restraining the Township and the Department of
Health from entering the unit to clean and do remediation work.
(Id.)  Opdycke did not assert any federal civil rights claims in
the suit, even though she acknowledged that she had such claims.
(10-29-01 Superior Ct. Trial Tr., Civ. Action No. 12055-01, at
34.)  The Superior Court of New Jersey, pursuant to an agreement
reached between the parties, granted Society Hill's requested
relief on September 23, 2002, ordering Opdycke to allow Society
Hill and the Township to inspect the unit.  (9-23-02 Superior Ct.
Order  Action No. 12055-01.)  It also required Opdycke to remove
all contents and clean the condo in preparation for sale.  (Id.)

Opdycke filed a complaint in this Court on October 14, 2003
alleging both federal and state claims against some or all of the
defendants.

6

Opdycke asserts federal claims for:

> (1) unreasonable search by all defendants;
>
> (2) unreasonable seizure by all defendants except Ferguson;
>
> (3) arrest without probable cause by Stout and Stein;
>
> (4) use of excessive force by all defendants;
>
> (5) violation of the Fifth Amendment right against self-incrimination by all defendants;
>
> (6) violation of the Sixth Amendment right to an attorney by all defendants; and
>
> (7) violation of the right to substantive and procedural due process by all defendants.

Opdycke asserts state claims for:

> (1) violation of liberty and property rights under the New Jersey Constitution by all defendants;
>
> (2) unreasonable search and seizure under the New Jersey Constitution by all defendants;
>
> (3) violation of the right to substantive and procedural due process under the New Jersey Constitution by all defendants;
>
> (4) assault and battery by Stout and Stein;
>
> (5) trespass by Stout, Stein and Carey;
>
> (6) property damage by all defendants;
>
> (7) harassment by all defendants except Carey;
>
> (8) malicious prosecution by all defendants except Stein;
>
> (9) false imprisonment by Stout, Stein, and the Township;
>
> (10) violation of state statutes and local ordinances by all defendants except the Township;
>
> (11) negligent training by the Township;
>
> (12) erroneous instructions by Ferguson and the Township;

7

(13) not following protocol by the Township; and

(14) respondeat superior as to the Township.

(Am. Compl.)  The Court has subject matter jurisdiction over plaintiffs' federal constitutional and statutory claims pursuant to 28 U.S.C. § 1331.  It has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367. The Township and Carey (collectively), and Stein, Stout, and Ferguson (collectively) now move for summary judgment as to all claims asserted against them.

## DISCUSSION

The Township and Carey argue that they are entitled to summary judgment because (1) Opdycke's claims are barred by res judicata,[1] (2) Opdycke has failed to allege the elements of her constitutional claims, and (3) the Township and Carey are immune from liability.  (Twp. & Carey Br., at 8, 13, 20.)  The police argue they are entitled to summary judgment because (1) Opdycke has not demonstrated the elements of the claims she has asserted, and (2) the police enjoy qualified immunity.  (Police Br., at 8, 13.)  Opdycke argues (1) she has alleged sufficient facts to demonstrate her claims, (2) the police do not have qualified

---

[1] The Township and Carey's brief refers to the "entire controversy doctrine."  (Twp. & Carey Br., at 8.)  The entire controversy doctrine is the law regarding claim preclusion in the state of New Jersey.  The proper doctrine to be applied in this federal action is res judicata.  Blonder-Tongue Labs. v. Univ. of Ill. Found., 402 U.S. 313, 324 n. 12 (1971).

8

immunity because their actions were not reasonable, and (3) res judicata does not apply because any prior action involved different parties.  (Pl. Br., at 3, 62, 74.)

## I. Standard for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the summary judgment movant has met this prima facie burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A nonmovant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

9

trial."  Anderson, 477 U.S. at 249.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

## II. Opdycke's Federal Claims

### A.  Res Judicata

The doctrine of res judicata or claim preclusion bars a subsequent action if:

> (1) the judgment in the first action is valid, final and on the merits; (2) the parties in both actions are the same or are in privity with each other; and (3) the claims in the second action . . . arise from the same transaction or occurrences as the claims in the first one.

Sibert v. Phelan, 901 F.Supp. 183, 186 (D.N.J. 1995).  It prohibits claims that were actually brought in a prior action, but also "foreclos[es] litigation of a matter that never has been litigated, because of a determination that it should have been

10

advanced in an earlier suit." Migra v. Warren City Sch. Dist.
Bd. of Educ., 465 U.S. 75, 77 n.1 (1984); Sibert, 901 F.Supp. at
186.  Res judicata bars such a successive action in federal court
even if the initial decision was rendered by a state court.
Flood v. Braaten, 727 F.2d 303, 308 (3d Cir. 1984).  Federal
courts must give the same preclusive effect to state court
judgments that those judgments would be given in the forum state.
Migra, 465 U.S. at 81.

Res judicata can be invoked "against a plaintiff . . . where
there is a close or significant relationship between successive
defendants." Gambocz v. Yelensics, 468 F.2d 837, 841 (3d Cir.
1972).  Specifically, "governmental officials sued in their
official capacities for actions taken in the course of their
duties are considered in privity with the governmental body."
Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988); see also
Conner v. Reinhard, 847 F.2d 384, 394 (7th Cir. 1988) ("a city
official sued in his official capacity is generally in privity
with the municipality").  Officials sued in their personal
capacities are not automatically in privity with a government
entity.  Williams v. City of Allentown, 25 F.Supp.2d 599, 604
(E.D. Pa. 1998).  A party, however cannot escape the rule of res
judicata through expansive pleading.  Cohen v. Shea, 788 F.Supp.
66, 68 (D. Mass. 1992) (barring claims against officials sued in
their individual capacities because the alleged acts were done

within the scope of their official capacities).  "The Third
Circuit has long recognized that privity is a legal conclusion;
the privity inquiry should be flexible enough to acknowledge the
realities of the parties' relationships" Willams, 25 F.Supp.2d at
604 (citation and quotes omitted) (recognizing that police sued
in their individual capacities were in privity with county); see
also Bruszewski v. U.S., 181 F.2d 419, 422 (3d Cir. 1950) (noting
the enlarged scope of res judicata "beyond any definable
categories of privity").  The second party should be deemed to be
in privity with the first when there is an identity of interests.
Williams, 25 F.Supp.2d at 604.

A subsequent action arises from the same transaction or
occurrence when there is "an essential similarity of the
underlying events giving rise to the various legal claims."
Davis v. U.S. Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982).
There is no "mechanical application" or "single test," but
factors to consider when evaluating the relationship of a prior
and subsequent action include the similarity of (1) the acts
complained of and the demand for relief, (2) the theory of
recovery, (3) the witnesses and documents needed at trial, and
(4) the material facts.  United States v. Athlone Indus., Inc.,
746 F.2d 977, 984 (3d Cir. 1984).

12

**B. Res Judicata Bars Opdycke's Federal Claims**

Opdycke's federal claims are barred by res judicata. Opdycke had the opportunity to assert the federal claims raised in this action in the third-party complaint in the Superior Court of New Jersey. (10-29-01 Superior Ct Tr., Civ. Action No. 12055-01, at 35-36.) Considering the <u>Davis</u> factors, the federal claims in the present action involve the same acts, material facts, documents, and witnesses as the third-party complaint. The third-party complaint recounts, among other things, Opdycke's illnesses, interactions with Society Hill, and the confrontation with Carey and the police officers on October 12, 2001. (10-19-01 Superior Ct. Answer & Third-Party Compl., Civ. Action No. 12055-01, at 5-10.) It alleges that allowing the Health Department to continue to act would deprive Opdycke of her property rights without due process, and would constitute an unreasonable search and seizure. (<u>Id.</u> at 11.)

Opdycke acknowledged in the third-party complaint that the pleadings could constitute a cause of action for violations of her civil rights by the Township, the Department of Health, Stout, Stein, Ferguson, and Carey. (<u>Id.</u> at 14.) Hearings in the state action were conducted before the judge on October 29, 2001 and June 11, 2002, and again Opdycke recognized that she may have civil rights claims. (10-29-01 Superior Ct. Trial Tr., Civ. Action No. 12055-01 at 34.) The judge advised her that (1) she

13

was free to amend her pleadings to include such claims in the
state action, and (2) normally such claims would be brought in
the pending action.  (Id. at 35-36.)  The third-party complaint
was not amended to add the civil rights claims.

The decision in the Superior Court action was valid, final,
and on the merits.  An order by the judge was entered on
September 23, 2002 with the consent of both parties, and the
action was closed.  (9-23-02 Superior Ct. Order., Civ. Action No.
12055-01.)  See Interdynamics, Inc. v. Firma Wolf, 653 F.2d 93,
96-97 (3d Cir. 1981) (noting that a consent decree is a judicial
act and possesses the same force as a judgment following a trial
on the merits).

The present federal claims are the civil rights claims that
Opdycke recognized she had in the state proceeding.  They should
have been raised there.  They arise from the same events of
October 12, 2001.  The federal action as the state action
includes allegations of unreasonable search and seizure, and
violations of Opdycke's due process rights, in addition to
violations of her Fifth and Sixth Amendment rights. (See Am.
Compl.)

The defendants in the present action are either the same as,
or in privity with, the third-party defendants in the state

14

action.  The Township was a defendant in the state action.[2]
Stout, Stein, Ferguson are police officers employed by the
Township.  (Am. Compl., at 2.)  Carey is a health officer
employed by the Township's Department of Health.  (Id.)  The
police and Carey are in privity with the Township because Opdycke
alleges that the four individuals violated her constitutional
rights while acting in their official capacities, and under color
of law.  (Id. at 2, 4-6.)  At the outset of the complaint here,
Opdycke also asserts that the action is being brought against
Stout, Stein, Ferguson, and Carey in their individual capacities.
(Id. at 5-6.)  However, the facts alleged relate to actions each
defendant undertook as part their official employment by the
Township.  Each count alleging a federal claim against one of the
individual defendants acknowledges, "[t]he individual defendants
were acting within the scope of their employment and their acts
were done in furtherance of the interests of the defendants,
Franklin Township, Franklin Township Police Department, and
Franklin Township Health Department."  (Id. at ¶¶ 55, 62, 69, 76,
84, 93, 100, 107.)  Here "the realit[y] of the parties'
relationship[]" is that the interests of Stout, Stein, Ferguson,
and Carey are aligned with that of the Township and there is

---

[2] The Franklin Township Department of Health, the other
party named in Opdycke's third-party complaint, was also named in
the present action, but was terminated on July 22, 2004.  (Dkt.
entry no. 15.)

privity among them.  <u>Williams</u>, 25 F.Supp.2d at 604.  The
allegation in the complaint that they are also being sued in
their individual capacities is not enough to defeat such privity.

   The facts above, considered together, lead us to conclude
that Opdycke's federal claims are barred by res judicata because
the prior action in New Jersey Superior Court was valid, final,
and on the merits, the parties in the state and federal actions
are in privity, and all of the claims raised relate to the events
of October 12, 2001.

## C. Opdycke's Federal Claims Present No Genuine Issue of Material Fact

   We hold that res judicata bars Opdycke's federal claims, for
the reasons stated above.  We further find that, summary judgment
is appropriate because there is no genuine issue of <u>material</u> fact
to sustain Opdycke's claims.

   The Fourth Amendment protects against unreasonable searches
and seizures.  A search occurs when (1) an individual has
manifested a subjective expectation of privacy, and (2) such an
expectation is one that society recognizes as reasonable.  <u>Kyllo
v. U.S.</u>, 533 U.S. 27, 32 (2001); <u>see also</u>, <u>California v.
Greenwood</u>, 486 U.S. 35, 38 (1988) (holding no search occurred
because there was no reasonable expectation of privacy).  A
seizure occurs "whenever a police officer accosts an individual
and restrains his freedom to walk away."  <u>Terry v. Ohio</u>, 392 U.S.
1, 16 (1968).  Two factors must be considered to determine

whether a seizure is unreasonable whether: (1) the police officer's actions were justified at their inception, and (2) the seizure was reasonably related in scope to the circumstances. Id. at 21.  The facts must be judged objectively, and an "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Id. at 20-21.  When force is used to effect a seizure or an arrest, the Fourth Amendment requires that it be reasonable.  Graham v. Connor, 490 U.S. 386, 396 (1989).  Two factors must be balanced, (1) the nature and quality of the intrusion on a person's Fourth Amendment rights, and (2) the governmental interest.  Id.  The severity of the crime, whether the individual poses a threat to the safety of the officers or others, and whether the individual is trying to evade arrest should be considered.  Id.  The right to make an arrest or investigatory stop carries the right to use some degree of physical coercion or threat.  Id.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment."  Id. (internal citation omitted).  The facts are to be viewed objectively, as officers are often forced to make "split-second judgments" in situations that are "tense, uncertain, and rapidly evolving."  Id. at 397; see also Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).

Officers are permitted to arrest persons without a warrant if there is probable cause.  Probable cause exists if given the facts and circumstances, a reasonable person would believe an offense has been committed.  U.S. v. Watson, 423 U.S. 411, 418-19 (1976); U.S. v. Henry, 361 U.S. 98, 102 (1959).  Warrantless searches and seizures are justified when exigent circumstances exist.  Warden Md. Penitentiary v. Hayden, 387 U.S. 294, 298-99 (1967).  The Fourth Amendment does not require police officers to delay when police action is necessary to prevent death or bodily harm, and to protect the safety of themselves and others.  Id.

The Fifth Amendment protects "the accused . . . from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." Schmerber v. California., 384 U.S. 757, 761 (1966) (emphasis added) (holding drawing blood of person arrested for driving under the influence did not violate his Fifth Amendment right against self-incrimination).  The Sixth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated." Kirby v. Illinois, 406 U.S. 682, 688 (1972).  Adversarial proceedings that trigger the right include arraignments and preliminary hearings.  Id. at 688-89.

Opdycke was not deprived of any Fourth Amendment rights.  No search of her unit occurred because she had no reasonable

18

expectation of privacy in the unit after it was declared unfit for human habitation.  The police actions to restrain Opdycke were a "seizure," however the seizure, and the force used to effect the seizure were reasonable when viewing the circumstances objectively.[3]  Officers Stout and Stein knew that the unit had been deemed uninhabitable and posed a health risk.  They had authorization from Ferguson to forcibly enter the unit.  They gave Opdycke several opportunities to allow them to enter the condo and Opdycke refused to cooperate.  Stout and Stein were aware of Opdycke's history of mental illness, and Opdycke threatened to kill herself.  When Stout and Stein began to force the door open, it appeared that Opdycke was resisting because she had propped a tea cart against the door that would not move because it was caught on the carpet.  Given Opdycke's failure to cooperate and threats posed to Opdycke's safety by herself and the contaminants in her condominium, it was reasonable for the police to restrain Opdycke upon entry.  Stout and Stein had probable cause for Opdycke's "arrest" because she committed the acts that led to the charges of disorderly conduct, obstruction

---

[3] Opdycke asserts that the use of excessive force is a violation of the Fourth and Fourteenth Amendments.  The claim however, is properly evaluated under the Fourth Amendment only. Graham v. Connor, 490 U.S. 386, 395 (1989) ("Today we make explicit . . . and hold that *all* claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.").

and simple assault, in their presence.[4]

Opdycke alleges that her Fifth Amendment rights were violated when the police gained access to her unit because once inside they might find evidence of an offense. (Am. Compl., at 45.) Opdycke's Fifth Amendment rights were not violated because any "evidence" the police may have discovered was not testimonial or communicative in nature. Opdycke also does not allege that any of the "incriminating evidence" was used against her. U.S. v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990) ("Although conduct by law enforcement officials prior to trial may ultimately impair that right [against self-incrimination], a constitutional violation occurs only at trial.").[5] Opdycke's Sixth Amendment rights were not violated because she makes no allegation that she was deprived of counsel during any adversarial proceedings.

_____

[4] Stout, Stein and Ferguson dispute the fact that Opdycke was arrested. (Police Br., at 2.) Opdycke was brought to the hospital, not the police station, no fingerprints or mug shot were taken, and no paperwork or processing for a criminal arrest were done. (Id.) Opdycke asserts, however that she was arrested. She has submitted the "Police Investigation Report" that indicates "suspect arrested" in two places, and the accompanying "Arrest Report." (Apuzzo Certif. Ex. P.) For the purposes of this opinion, the Court will consider Opdycke to have been arrested because the Court must view the facts in the light most favorable to the non-moving party.

[5] Opdycke has not alleged violations of her Fifth Amendment rights within the context of Miranda. Even if she had, she was not entitled to Miranda warnings. Miranda v. Arizona, 384 U.S. 436 (1966). Miranda warnings only come in to play when "a person in custody is subjected to either express questioning or its functional equivalent" Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

Contrary to the allegation in the complaint, Opdycke had no Sixth Amendment right to counsel when the police came to her home on October 12, 2001.  (Am. Compl., at 32).  Finally, Opdcyke cannot prevail on claims for violations of her Fourteenth Amendment rights to substantive and procedural due process because the Fourth, Fifth, and Sixth Amendments provide for the rights she has asserted, and she has not demonstrated that those rights were infringed.  Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims.").  Overall, Opdycke has alleged no material facts that support her claims.  Accordingly, we hold that the defendants are entitled to judgment as a matter of law as to the claims brought under federal law.[6]

---

[6] Stout, Stein and Ferguson argue in their brief that they are entitled to qualified immunity.  (Police Br., at 13.)  The Court does not reach the issue of qualified immunity because we have found no violation of Opdycke's federal constitutional rights.  Saucier v. Katz, 533 U.S. 194, 201 (2001) ("[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").  The Township and Carey argue they have no respondeat superior liability.  (Twp & Carey Br., at 13.)  The Court does not reach the issue of respondeat superior liability because there is no underlying constitutional violation by Stout, Stein, and Ferguson.

### III. Opdycke's State Claims

The Court has jurisdiction over Opdycke's state law claims pursuant to 28 U.S.C. § 1367(a) which provides:  "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  A district court, however may decline to exercise supplemental jurisdiction over such claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 181 (3d Cir. 1999) (upholding dismissal of remaining claims based on Section 1367(c)(3) because federal claim had been dismissed).

The Court has disposed of the federal constitutional and statutory claims that provided the Court with subject matter jurisdiction.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3).  The state law claims will be dismissed without prejudice, and the statute of limitations for plaintiffs to bring such claims in state court will be tolled for thirty days after the date of this dismissal.  28 U.S.C. § 1367(d).

## <u>CONCLUSION</u>

The Court, for the reasons stated <u>supra</u>, will grant the parts of the separate motions for summary judgment on the claims brought under federal law by (1) the Township and Carey, and (2) Stout, Stein, and Ferguson.  An appropriate order and judgment will be issued.

    s/ Mary L. Cooper

**MARY L. COOPER**
United States District Judge

23